UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE

ROBIN A. HURRELBRINK,      )
      )
      Plaintiff,      )
      )
v.      )      No. 2:21-CV-143-JEM
      )
KILOLO KIJAKAZI,[1]      )
Acting Commissioner of Social Security,      )
      )
      Defendant.      )

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 11]. Now before the Court are Plaintiff's Motion for Judgment on the Pleadings [Doc. 12] and Defendant's Motion for Summary Judgment [Doc. 20]. Robin A. Hurrelbrink ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Kilolo Kijakazi ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

## I.    PROCEDURAL HISTORY

On December 18, 2019, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that began on June 14, 2019 [Tr. 16, 172–76]. After her application was denied initially and upon reconsideration, she requested a hearing before an ALJ [*Id.* at 97–100, 108–12, 114–15].

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration ("the SSA") on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is substituted for Andrew Saul as the defendant in this suit. *See* 42 U.S.C. § 405(g).

A telephonic hearing was held on March 9, 2021 [*Id.* at 25–56]. On March 31, 2021, the ALJ found that Plaintiff was not disabled [*Id.* at 13–24]. The Appeals Council denied Plaintiff's request for review on August 25, 2021 [*Id.* at 1–3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on September 15, 2021, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II.    ALJ FINDINGS

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2. The claimant has not engaged in substantial gainful activity since June 14, 2019, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following severe impairments: right ankle dysfunction status-post fusion and obesity (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can stand and or walk for up to two hours in an eight hour workday with occasional pushing and/or pulling with the right lower extremity; no climbing of ladders, ropes, or scaffolds; frequent climbing ramps or stairs, balancing, and crawling; and she should avoid exposure to unprotected heights, moving mechanical parts, or other workplace hazards.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on November 18, 1962 and was 56 years old, which is defined as an individual of advanced age, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. The claimant has acquired work skills from past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, the claimant has acquired work skills from past relevant work that are transferable to other occupations with jobs existing in significant numbers in the national economy (20 CFR 404.1569, 404.1569(a) and 404.1568(d)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from June 14, 2019, through the date of this decision (20 CFR 404.1520(g)).

[Tr. 18–24].

## III.    STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

3

*Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Hum. Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Additionally, the Supreme Court recently explained that "'substantial evidence' is a 'term of art,'" and "whatever the meaning of 'substantial' in other settings, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). Rather, substantial evidence "means—and means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted). On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Hum. Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted). Furthermore, the Court is not under any obligation to scour the record for errors not identified by the claimant and arguments not raised and supported in more than a perfunctory manner may be deemed waived. *See McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) (noting that conclusory claims of error without further argument or authority may be considered waived).

4

## IV. DISABILITY ELIGIBILITY

"Disability" means an individual cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual will only be considered disabled:

> if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

5

"based on all the relevant medical and other evidence in [the claimant's] case record." 20 C.F.R. §§ 404.1520(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. *Id.* § 404.1545(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V.    ANALYSIS

Plaintiff raises three arguments on appeal. First, she contends that the prior proceedings conducted through the SSA and the Appeals Council are invalid because the Commissioner of Social Security was not constitutionally appointed. Plaintiff claims she is entitled to a new hearing before constitutionally appointed officers. Second, and in the alternative, she argues that the ALJ's decision lacks the support of substantial evidence because he improperly determined she had prior work skills that could transfer to other work existing in the national economy. She asserts two of the jobs enumerated by the vocational expert at the hearing require more skill to perform than she had shown in her past work, and the third job is wholly inconsistent with prior work as a call center operator. Third, Plaintiff claims the ALJ's decision lacks the support of substantial evidence because he did not properly evaluate her symptoms pursuant to Social Security Ruling 16-3p. In the event the Court finds the ALJ had authority to make a determination, Plaintiff requests that the Court order an immediate award of benefits, based on the "overwhelming" medical evidence of record, or remand this case for further proceedings.

6

The Commissioner argues that Plaintiff's separation-of-powers argument does not entitle her to a rehearing of her disability claim. In addition, the Commissioner maintains that substantial evidence supports the ALJ's conclusion that she had past work skills that could transfer to other work, the ALJ's evaluation of her subjective complaints, and the ALJ's final RFC determination. The Commissioner requests that this Court affirm Plaintiff's final decision.

For the reasons below, the Court finds Plaintiff's arguments are not well taken. First, Plaintiff's separation of powers argument lacks merit because she has failed to show how 42 U.S.C. § 902's removal provision, even if unconstitutional, has caused her compensable harm. Second, the ALJ's determination that Plaintiff had transferrable work skills is supported by substantial evidence. Third, the ALJ appropriately evaluated Plaintiff's symptoms and properly considered her subjective complaints about how they limited her functional abilities.

A.    Plaintiff's Request for Remand Based on Separation of Powers

Plaintiff claims that the ALJ's decision denying her social security benefits is constitutionally invalid under separation of powers principles. She argues 42 U.S.C. § 902(a)(3), which provides that "an individual serving in the office of Commissioner may be removed from office only pursuant to a finding by the President of neglect of duty or malfeasance in office," is unconstitutional under *Seila Law LLC v. CFBP*, 140 S. Ct. 2183 (2020) [Doc. 13 p. 6]; that this unconstitutional removal provision renders the Commissioner's appointment—and all actions taken by the Commissioner during his appointment—unconstitutional [*Id.* at 6–8]; and since the Commissioner's subordinates—including the ALJ and Appeals Council—served under authority delegated from the Commissioner, their appointments are also invalid and any decisions they

7

rendered—including the ALJ's decision denying Plaintiff social security benefits—are invalid [*Id.* at 7–8].[2]

The Commissioner agrees with Plaintiff that 42 U.S.C. § 902(a)(3) violates separation of powers principles to the extent it limits the President's authority to remove the Commissioner without cause [Doc. 21 p. 13 (citing Office of Legal Counsel, U.S. Dep't of Justice, Constitutionality of the Commissioner of Social Security's Tenure Protection, 2021 WL 2981542 (July 8, 2021) ("OLC Op."))]. The Commissioner disagrees, however, that the unconstitutional removal restriction invalidates the ALJ's decision denying Plaintiff's benefits. The Commissioner argues "as an initial matter" that the ALJ who decided Plaintiff's case was validly appointed because he was appointed by an Acting Commissioner not subject to the unconstitutional removal restriction [*Id.* at 14]. The Commissioner then moves on to its "most fundamental[]" argument, namely, that Plaintiff cannot show the unconstitutional removal restriction inflicted compensable harm on her—as required by *Collins v. Yellen*, 141 S. Ct. 1761, 1787–89 (2021)—because the restriction does not strip the Commissioner of his remaining authority [*Id.* at 14].[3] For the reasons

---

[2]     Plaintiff acknowledges that she did not raise this constitutional challenge at the lower administrative levels but notes that she was not required to do so before consideration by this Court [Doc. 13 p. 7 (citing *Ramsey v. Comm'r of Soc. Sec.*, 973 F.3d 537 (6th Cir. 2020) (holding that the Appointments Clause challenge did not have to be raised before the SSA and could be raised in the District Court); *Carr v. Saul*, 141 S. Ct. 1352, 1358–60 (2021) (finding that the Appointments Clause challenges do not have to be raised in the administrative proceedings but can be raised for the first time in the district court))].

[3]     The Commissioner also asserts the harmless error doctrine, the de facto officer doctrine, the rule of necessity, and broad prudential considerations [Doc. 21 pp. 21–25]. Because the Court finds Plaintiff has not suffered compensable harm, it declines to address these alternative arguments. *See Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683, at *8 (S.D. Ohio Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-cv-6081, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022) (declining to reach similar arguments made by the Commissioner in light of holding on separation-of-powers claim).

explained below, the Court finds the Commissioner's "most fundamental" argument dispositive here.

### 1.    The ALJ's Appointment was Ratified by an Acting Commissioner

Plaintiff asserts the unconstitutional removal restriction rendered the ALJ's appointment invalid [Doc. 13 pp. 7–8]. The Commissioner argues that the ALJ's appointment is valid regardless of the unconstitutional removal restriction because the ALJ was appointed by an Acting Commissioner who was not subject to the removal restriction [Doc. 21 pp. 15–17]. In support of this argument, the Commissioner relies on *Collins v. Yellen*, 141 S. Ct. 1761 (2021) [*Id.*]. In *Collins*, the Supreme Court distinguished between actions taken by an Acting Director and those taken by a confirmed Director. *Collins*, 141 S. Ct. at 1782–83, 1787. The Court found that any actions taken by an Acting Director could not result in compensable harm to a plaintiff because the removal restriction did not apply them. *Id.* Rather, the restriction applied only to confirmed Directors. *Id.* Thus, only actions taken by a confirmed Director could—at least potentially—cause a plaintiff compensable harm. *Id.* The Commissioner notes the ALJ in this case was appointed in July 2018 by then-Acting Commissioner Berryhill [Doc. 21 p. 16]. The Commissioner argues the ALJ was therefore properly appointed according to *Collins* [*Id.*].

The Court finds the ALJ's appointment in this case is constitutionally valid. The Court observes that Nancy A. Berryhill became the Acting Commissioner on January 23, 2017, *Geissler v. Berryhill*, No. 2:16-cv-06590, 2017 WL 3599193, at *1 n.1 (S.D.W.V. Aug. 21, 2017), and served until Andrew Saul was confirmed on June 17, 2019, *Lisa D. v. Kijakazi*, No. 8:21CV294, 2020 WL 952778, at *6 (D. Neb. March 30, 2022). Saul then served as Commissioner until July 9, 2021, when President Biden appointed Kilolo Kijakazi as Acting Commissioner. *Id.* As the Commissioner notes, the ALJ was appointed in July 2018 during Acting Commissioner Berryhill's

9

tenure. Since Acting Commissioner Berryhill was not subject to the unconstitutional removal restriction, the removal restriction could not have impacted the constitutionality of the ALJ's appointment in any way and the ALJ's appointment is therefore valid.

The remaining question is what impact the Court's finding regarding the validity of the ALJ's appointment has on the ultimate issue of whether the ALJ's decision was valid in this case. The Commissioner does not appear to argue the validity of the ALJ's appointment resolves the ultimate issue and, regardless, the Court does not find that the ALJ was properly appointed resolves the dispute. As discussed above, *Collins* distinguishes between actions taken by an Acting Commissioner and those taken by a confirmed Commissioner. In this case, the ALJ rendered his decision on March 31, 2021. At that time, Andrew Saul was the confirmed Commissioner and he was subject to the improper removal restriction. The fact that the ALJ's decision was rendered during Saul's tenure provides at least a conceivable nexus between the ALJ's decision and the improper removal restriction, even if the ALJ was properly appointed. The Court therefore turns to the Commissioner's "most fundamental" argument.

### 2. Plaintiff Fails to Show that the Commissioner's Statutory Tenure Protection Resulted in Compensable Harm to Her

The Commissioner's "most fundamental" argument as to why the ALJ's decision was valid is that the unconstitutional removal restriction did not strip the Commissioner of his remaining authority and therefore the restriction could not have inflicted any compensable harm on Plaintiff as required by *Collins* [Doc 21 pp. 17–21]. In *Collins*, the Supreme Court was first tasked with deciding whether 12 U.S.C. § 4512(a), (b)(2), which provided that the Director of the Federal Housing Finance Agency ("the FHFA")—an independent agency with a single Director—could only be removed "for cause," was unconstitutional in light of *Seila Law*. *See Collins*, 141 S. Ct.

at 1770. The Court found *Seila Law* was "all but dispositive" and rendered the for-cause restriction unconstitutional under separation of powers. *Id.* at 1783–87.

The Supreme Court then turned to the petitioners' argument that the unconstitutional restriction rendered an amendment adopted by the prior Acting Director of the FHFA and implemented by the confirmed Directors void. *See id.* at 1787–88. The Court first made the distinction discussed above between actions taking by an Acting Director and confirmed Director, finding only those actions taken by a confirmed Director could create a plausible claim. *Id.* at 1782–83, 1787. The Court then went on to find that even for a confirmed Director, the unconstitutional removal restriction did not strip the Director of their remaining authority provided they "were properly *appointed*" because the improper removal restriction only "limited the President's authority to *remove* the confirmed Directors." *Id.* at 1787. Where the confirmed Director was properly appointed, there was "no reason to regard any of the actions taken by the FHFA in relation to the [] amendment as void." *Id.*

The Court cautioned, however, that it was "still possible for [the] unconstitutional provision to inflict compensable harm" even when the Director was properly appointed. *Id.* at 1789. The Court ultimately remanded the compensable-harm issue to the lower courts. *See id.* Before doing so, however, it noted scenarios in which it was possible that the unconstitutional for-cause provision could have resulted in compensable harm to a petitioner. *See id.* One example was if "the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have 'cause' for removal." *Id.* A second was if "the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way." *Id.* In these instances, "the statutory provision would clearly cause harm." *Id.*

11

In this case, Plaintiff relies only on the unconstitutional removal restriction. She does not cite any evidence the President unsuccessfully attempted to remove Commissioner Saul or had otherwise made a public statement expressing his desire to do so. In fact, she notes the current President "promptly removed the former Commissioner and appointed the new Acting Commissioner" [Doc 13 p. 7]. The Court therefore finds Commissioner Saul retained the authority to exercise those powers inured to him by statute upon his appointment—including the power to decide social security benefits claims or delegate those decisions to subordinate officers—meaning Plaintiff suffered no compensable harm.

The Court's finding that Plaintiff suffered no compensable harm is further supported by the rationale espoused by Justice Kagan in her concurrence in *Collins*. In her concurrence, Justice Kagan first reiterated the test set forth by the majority, namely, that "[P]laintiffs alleging a removal violation are entitled to injunctive relief—a rewinding of agency action—only when the President's inability to fire an agency head affected the complained-of decision." *Collins*, 141 S. Ct. at 1801 (Kagan, J. concurring). Justice Kagan then added, "Granting relief in any other case would, contrary to usual remedial principles, put the plaintiffs 'in a better position' than if no constitutional violation had occurred." *Id.* (citations omitted). The Commissioner cites Justice Kagan's rationale and argues that providing Plaintiff her requested relief would "provide her an unwarranted remedial windfall" [Doc. 21 p. 20]. Specifically, "she should be awarded a rehearing for no reason other than Section 902(a)(3)'s existence, whether or not she can show that its restriction . . . had any effect on her benefits claim" [*Id.* at 20–21]. The Commissioner adds that, "[w]ere it otherwise," not only Plaintiff, but "thousands of other disappointed claimants" would also receive the windfall [*Id.* at 21]. The Court agrees that granting Plaintiff her requested relief in this case because of the unconstitutional removal restriction would put her in a better position

12

than if no constitutional violation had occurred at all. The Court finds Plaintiff's request for remand based upon separation of powers is without merit.[4] *See Boggs v. Kijakazi*, No. 2:21-CV-17-DCP (E.D. Tenn. Sept. 20, 2022) (finding the plaintiff's request for remand without merit for similar reasons).

## B.    ALJ's Finding that Plaintiff Had Transferrable Skills

Plaintiff alternatively argues that the ALJ erred in finding she had skills that were transferrable to other work existing in the national economy. During Plaintiff's hearing, the ALJ

---

[4]    The Court's decision falls in line with the numerous district courts, both in and out of this circuit, that have addressed similar claims raised by disability plaintiffs and that have reached a similar conclusion in rejecting requests for remand. *See, e.g.*, *Jeffrey G. v. Comm'r of Soc. Sec.*, No. 2:21-cv-938, 2022 WL 1314433 (S.D. Ohio May 3, 2022); *Walker v. Comm'r of Soc. Sec.*, No. 4:20-CV-02506, 2022 WL 1266135 (N.D. Ohio Apr. 28, 2022); *Miley v. Comm'r of Soc. Sec.*, No. 1:20-CV-2550, 2021 WL 6064754 (N.D. Ohio Dec. 22, 2021); *Wybo v. Kijakazi*, No. 20-518, 2021 WL 6052423 (E.D. Ky. Dec. 21, 2021); *Butcher v. Comm'r of Soc. Sec.*, No. 2:20-cv-6081, 2021 WL 6033683 (S.D. Ohio Dec. 21, 2021), *report and recommendation adopted*, No. 2:20-cv-6081, 2022 WL 523519 (S.D. Ohio Feb. 22, 2022); *Crawford v. Comm'r of Soc. Sec.*, No. 2:21-cv-726, 2021 WL 5917130 (S.D. Ohio Dec. 14, 2021), *report and recommendation adopted*, No. 2:21-cv-726, 2022 WL 219864 (S.D. Ohio Jan. 25, 2022); *see also, e.g.*, *Jean P. v. Kijakazi*, No. 8:21-CV-200, 2022 WL 1505797 (D. Neb. May 12, 2022); *Numan v. Saul*, No. 20-CV-1978, 2022 WL 891111 (S.D. Cal. Mar. 24, 2022); *Standifird v. Comm'r of Soc. Sec.*, No. 20CV1630, 2021 WL 5634177 (S.D. Cal. Dec. 1, 2021), *report and recommendation adopted*, No. 3:20cv1630, 2022 WL 970741 (S.D. Cal. Mar. 31, 2022); *Lisa Y. v. Comm'r of Soc. Sec.*, No C21-5207, 2021 WL 5177363 (W.D. Wash. Nov. 8, 2021); *Robinson v. Kijakazi*, No. 1:20-CV-00358, 2021 WL 4998397 (W.D.N.C. Oct. 27, 2021).

Some of these courts have denied plaintiffs' claims for additional reasons, including for reasons under the doctrine of severability. *Jeffrey G.*, 2022 WL 1314433, at *5 (citing *Butcher*, 2021 WL 6033683, at *7). Those district courts have found that if § 902(a)(3)'s removal provision is stricken, then the SSA would remain fully functional. *Id.*; *see also Butcher*, 2021 WL 6033683 at *7 (citing *Alice A. v. Comm'r of Soc. Sec.*, No. C20-5756, 2021 WL 5514434, at *6 (W.D. Wash. Nov. 24, 2021) and finding that the plaintiff's separation of powers claim failed, in part, because even if § 902(a)(3) was unconstitutional, it was severable from the remainder of the statutes governing the SSA); *Shaun A. v. Comm'r of Soc. Sec.*, No. C21-5003, 2021 WL 5446878, at *4 (W.D. Wash. Nov. 22, 2021) (same); *John R. v. Comm'r of Soc. Sec.*, No. C20-6176, 2021 WL 5356719, at *8 (W.D. Wash. Nov. 16, 2021) (same). Given the parties' arguments in this case and the Court's findings, the Court need not address the severability argument here.

asked the vocational expert to classify Plaintiff's prior work [Tr. 36]. The vocational expert

classified Plaintiff's prior work as that of a general office clerk, Dictionary of Occupational Titles

("DOT") # 209.562-0101, with a specific vocational preparation ("SVP") of 3 [Doc. 13 p. 10

(citing Tr. 36)]. The ALJ then asked the vocational expert whether an individual of Plaintiff's age,

education, work experience, and RFC had skills that were transferrable to other jobs existing in

significant numbers in the national economy [Tr. 45].[5] The vocational expert responded

affirmatively and provided examples of jobs that such an individual could perform, including work

as an order clerk,[6] DOT # 249.362-026 (SVP 4 with 200,000 jobs in the national economy);

receptionist, DOT # 237.367-038 (SVP 4 with 200,000 jobs in the national economy); and

telephone operator,[7] DOT # 235.662-022 (SVP 3 with 100,000 jobs in the national economy) [*Id.*

---

[5]     Plaintiff states in her brief that a vocational expert's testimony in response to a hypothetical question may constitute substantial evidence only if the hypothetical question accurately portrays the claimant's individual impairments [Doc. 13 p. 9 (citing *Varley v. Sec'y of Health & Hum. Servs.*, 820 F.2d 777 (6th Cir. 1987))]. Plaintiff fails to argue, however, how the hypothetical question posed by the ALJ did not accurately portray her impairments.

[6]     Plaintiff submits that it is unclear what, if any, job the vocational expert was describing [Doc. 13 p. 11]. The hearing transcript notes the vocational expert stated "auto clerk" with DOT code 249.362-126 [Tr. 49]. But Plaintiff states DOT code 249.362-126 does not exist [Doc. 13 p. 11]. The Commissioner responds there was a "transcript error" in the hearing transcript and the vocational expert actually said "order clerk" [Doc 21 p. 29 (citing Tr. 49)], which is assigned DOT code 249.362-026. The ALJ identified the position as "office clerk" in his decision [Tr. 23], but included the DOT number for "order clerk" [*Id.*]. The Court agrees with the Commissioner that the discrepancy was likely a transcription error and will conduct the analysis as though the ALJ was considering the "order clerk" position with DOT code 249.362-026. The Court further finds that to the extent the vocational expert was referring to a different job classification, any error in the ALJ's decision would be harmless in light of the Court's analysis regarding the receptionist and telephone operator jobs.

[7]     The vocational expert testified at the hearing to "call center jobs" with DOT code 235.662-022 [Tr. 49]. The ALJ similarly referred to this job as a "call center operator", listing DOT code 235.662-022 [*Id.* at 23]. DOT Code 235.662-022 is titled "Telephone Operator" and lists alternative titles of: "control-board operator; pbx operator; private-branch-exchange operator; switchboard operator; [and] telephone-switchboard operator."

14

at 49]. The ALJ relied on the vocational expert's testimony regarding these alternative jobs to find Plaintiff was "not disabled" [Tr. 23].

Plaintiff argues the ALJ erred in relying on the vocational expert's testimony regarding the alternative job opportunities available to Plaintiff.[8] She notes that "a vocational expert's testimony may be so feeble or contradicted" that it cannot constitute substantial evidence [Doc. 13 p. 9 (citing *Biestek*, 139 S. Ct. at 1155–56)]. She argues that is the case here because two of the jobs cited by the vocational expert—order clerk and receptionist—require more skill to perform than she had previously shown in her work history while the third job—telephone operator—is wholly inconsistent with her prior work as a call center operator. [*Id.* at 12]. The Commissioner responds by noting "the ALJ may rely on [vocational expert] testimony" in "determining the transferability of skills" and the vocational expert in this case testified to such jobs [Doc 14 p. 26 (citing *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 857 (6th Cir. 2010) ("However, this Court finds the ALJ relied on the VE's ultimate opinion that Kyle's skills were transferrable, and this testimony served as substantial evidence upon which it was proper for the ALJ to rely."))]. The Court finds that substantial evidence supports the ALJ's determination that Plaintiff had prior work skills that could transfer to other work existing in the national economy.

### 1. Order Clerk and Receptionist Positions

Plaintiff submits the ALJ erred in relying on the vocational expert's testimony regarding the alternative jobs of order clerk and receptionist because they required more skill to perform than her previous work. Specifically, Plaintiff notes the vocational expert classified her previous work

---

[8]     Plaintiff relates that transferability of skills is a key issue here because, absent transferability of skills, she would be presumptively disabled under Grid Rules 201.06 or 202.06 of the Medical Vocational Guidelines ("Guidelines") 20 C.F.R. Part 404, Subpart P, App. 2.

as that of a general office clerk with an SVP of 3, while two of the alternative positions relied on by the vocational expert have an SVP of 4 [Doc. 13 p. 10]. Plaintiff argues this is problematic because "the Commissioner has recognized that an individual cannot transfer skills . . . to work involving a greater level of skill than the work from which the individual acquired those skills" [*Id.* (citing SSR 82-41, 1982 WL 31389 (Jan. 1, 1982); SSR 00-4P, 2000 WL 1898704 (Dec. 4, 2000))]. Plaintiff argues the error is compounded by the fact she is of advanced age—over 55— and there are special rules for transferability of job skills for such individuals, including that there must be very little, if any, vocational adjustment required [*Id.* at 11 (citing 20 C.F.R. § 404.1568(d)(4) (2008); *Burton v. Sec'y of Health & Hum. Servs.*, 893 F. 2d 821, 823 (6th Cir. 1990))].

The Commissioner contends the ALJ appropriately relied on the vocational expert's testimony regarding the order clerk and receptionist positions. The Commissioner notes 20 C.F.R. section 404.1568(d)(4) and SSR 82-41 fail to differentiate by SVP and, rather, only require that Plaintiff's previous work and alternative job opportunities fall within the same skill level [Doc. 21 ¶. 26–27]. The Commissioner argues that both Plaintiff's previous work and the alternative jobs cited by the vocational expert fall into the same skill category of "semi-skilled work" because both "require more than 30 days to learn" [*Id.* at 27 (quoting SSR 82-41 at *2) (citing DOT, app. C, 1991 WL 688702 (defining jobs with an SVP of 3 as those requiring "[o]ver 1 month up to and including 3 months" to learn and jobs with an SVP of 4 as requiring "[o]ver 3 months up to and including 6 months"))]. The Commissioner argues there is therefore no issue with the ALJ relying on the alternative job opportunities despite each having an SVP of 4.

The Court finds the ALJ properly relied on the order clerk and receptionist jobs despite each having an SVP of 4. Section 404.1568 sets forth the criteria used to determine the

16

transferability of skills. Section 404.1568(d)(2) states, "Transferability is most probable and meaningful among jobs in which—(i) The same or a lesser degree of skill is required; (ii) The same or similar tools and machines are used; and (iii) The same or similar . . . services are involved." As it relates to the "degree of skill [] required," sections 404.1568 also sets forth three skill categories to be used in classifying jobs, including "unskilled work," "semi-skilled work," and "skilled work." SSR 00-4p elaborates on these skill categories and states that "semi-skilled work corresponds to an SVP of 3–4."

SSR 82-41 also provides additional guidance on the transferability rules set forth in section 404.1568(d)(2). SSR 82-41 reiterates that transferability "is most probable" when "the same or a lesser degree of skill is required, because people are not expected to do more complex jobs than they have actually performed (i.e., from a skilled to a semiskilled or another skilled job, or from one semiskilled to another semiskilled job)." SSR 82-41 at *5. The ruling expounds upon the three skill categories. Specifically, it describes a semi-skilled job as one "requir[ing] more than 30 days to learn." *Id.* at *2. It delineates three sub-categories within the "semiskilled" jobs classification, including 1) jobs "[a]t the lower level of semiskilled work" that have minimal, if any, transferability, 2) jobs that have "a higher level of semiskilled work" but still only have minimal transferable skills, and 3) jobs that include skills that are "readily transferable to [other] semiskilled sedentary occupations." *Id.* at *3. In describing the third sub-category—for jobs that are readily transferable—the ruling states:

> [A] semiskilled general office clerk (administrative clerk), doing light work, ordinarily is equally proficient in, and spends considerable time doing, typing, filing, tabulating and posting data in record books, preparing invoices and statements, operating adding and calculating machines, etc. These clerical skills may be readily transferable to such semiskilled sedentary occupations as typist, clerk-typist and insurance auditing control clerk.

17

*Id.*  The Court notes that the general office clerk position used in the ruling's example is the same position used by the vocational expert to describe Plaintiff's prior work in this case and contains an SVP of 3.  The Court further notes that the clerk-typist position noted in the example has an SVP of 4.  *See* DOT # 203.362-010.

After reviewing section 404.1568, SSR 00-4p, and SSR 82-41, the Court finds the ALJ did not err in relying on the order clerk and receptionist positions, despite that they have an SVP of 4.  The focus in determining transferability is whether "[t]he same or lesser degree of skill is required."  20 C.F.R. § 404.1568; SSR 82-41.  In determining the "skill [] required", neither section 404.1568 or SSR 82-41 differentiate between SVP levels.  The only source relied on by Plaintiff that differentiates between SVP levels is SSR 00-4p, and that ruling explicitly states that "semi-skilled work corresponds to an SVP of 3–4."  Based on the language of SSR 00-4p, the general office clerk position Plaintiff previously held as well as the alternative positions of order clerk and receptionist positions would fall in the semi-skilled category.  It was therefore appropriate for the ALJ to consider the order clerk and receptionist positions as alternative jobs to which Plaintiff's skills would transfer.  The Court is also persuaded by the fact that SSR 82-41 states that a general office clerk—the same position Plaintiff previous held and which has an SVP of 3—has skills that can readily be transferred to a job with an SVP of 4.  The Court therefore finds the ALJ did not err in relying on alternative jobs with an SVP of 4.

The Court further finds Plaintiff's advanced age also did not preclude the ALJ from relying on the order clerk and receptionist positions as alternative jobs.  Section 404.1568(d)(4) provides that for applicants age 55 or older who have a severe impairment limiting them to "sedentary or light work," a finding that they can make an adjustment to other work is appropriate only if they "have skills that [] can transfer to other skilled or semiskilled work."  The Court notes section

18

404.1568(d)(4) says nothing about different SVP levels. The regulations do, however, break down the applicable test based on the applicant's age. For applicants who "are of advanced age but have not attained age 60, and [] have a severe impairment(s) that limits [them] to no more than light work," the ALJ is to "decide if [the applicant has] skills that are transferrable to skilled or semiskilled light work." 20 C.F.R. § 404.1568(d)(4). For applicants "age 60 or older[] and [who] have a severe impairment(s) that limits [them] to no more than light work," the ALJ is allowed to find they have skills "transferable to skilled or semiskilled light work only if the light work is so similar to [] previous work that [the applicant] would need to make very little, if any, vocational adjustment in terms of tools, work processes, work settings, or the industry." *Id.*

Plaintiff was 56 years old at the time of the hearing [Tr. 22]. At the hearing, the ALJ first asked the vocational expert what jobs "a hypothetical person of the *same age*, education, and work experience of the Claimant" could do [*Id.* at 45 (emphasis added)]. After the vocational expert provided the order clerk, receptionist, and telephone operator jobs, the ALJ asked the vocational expert whether the alternative jobs he listed—including order clerk and receptionist—required any additional skills as compared to Plaintiff's prior work as an office clerk [*Id.* at 50]. The vocational expert responded "No. General office work covers the same kind of records, the same kind of equipment. So I don't think it's a substantial change . . . ." [*Id.*]. The ALJ then asked whether "these [alternative] jobs [are] so similar to Claimant's past work as an office clerk that [she] would need to make very little, if any, vocational . . . adjustments in terms of tools, work processes, work settings in the industry," to which the vocational expert testified "those same skills would be well within the jobs that we have suggested. There would not be any major differences" [*Id.* at 50]. The ALJ then relied on the vocational expert's testimony in his order [*Id.* at 23]. An ALJ is permitted to rely on a vocational expert's testimony regarding the transferability of a plaintiff's

19

skills. *See Kyle*, 609 F.3d at 857. The Court therefore finds no error in the ALJ's findings regarding the transferability of Plaintiff's skills, despite her advanced age.

### 2. Telephone Operator Position

Even if the ALJ should not have considered the order clerk and receptionist jobs, the vocational expert also identified a telephone operator job, with an SVP of 3 [Tr. 49]. Plaintiff claims that the telephone operator position has major differences from her prior work as a call center operator and that it is simply not credible to find that there would be very little, if any, vocational adjustment between these jobs [Doc. 13 pp. 12–13]. To the extent Plaintiff is comparing the duties she performed during her brief tenure as a call center operator to the duties of a telephone operator, her argument is unavailing. The ALJ did not find that her past work as a call center operator was past relevant work [Tr. 22 (identifying past relevant work as a general office clerk and a CNA), 38 (Plaintiff testified that she had past work as a "call operator" for a call center for eight weeks), 231, 255 (Plaintiff states she worked as a "call operator" for a call center from May 2013 to July 2013)]. Rather, the ALJ found that, based on the vocational expert's testimony, Plaintiff acquired skills in her past relevant work as a general office clerk that were transferrable to the job of a telephone operator—in addition to the receptionist and order clerk jobs—and that she would need to make little, if any, vocational adjustment to perform those jobs [Tr. 23, 37, 48–50 (vocational expert testified that the "same skills would be well within the jobs that we have suggested" and that "[t]here would not be any major differences")]. Again, the ALJ may rely on the vocational expert's testimony pertaining to the transferability of skills, *see Kyle*, 609 F.3d at 857, which is what the ALJ did in this case.

In her brief, Plaintiff also appears to argue that the telephone operator job is technologically and economically obsolete, but she provides no relevant legal support for this argument [*See* Doc.

20

13 p. 13].  Even though the DOT description for telephone operator describes some duties involving use of a switchboard, it also lists the duties of supplying information to callers, recording messages, keeping a record of calls placed, receiving visitors, scheduling appointments, and performing clerical duties.  *See* DOT # 235.662-022.  The Court finds that Plaintiff has not established any error warranting remand on this issue.

The ALJ's decision regarding the transferability of Plaintiff's prior work to the alternative positions cited by the vocational expert is supported by substantial evidence.  Remand is therefore not warranted on this basis.

### C.    ALJ's Evaluation of Plaintiff's Symptoms and Subjective Complaints

Plaintiff contends the ALJ's decision lacks the support of substantial evidence because he failed to appropriately evaluate her symptoms and improperly discredited her subjective statements as to their severity and disabling effects.  She states it is clear the ALJ failed to properly weigh her symptoms as required by Social Security Ruling 16-3p in this case, particularly because of her hearing testimony revealing that she had "severe difficulties with her right ankle" [Doc. 13 p. 14 (citing Tr. 40–41)].

The Commissioner asserts that the ALJ appropriately concluded that Plaintiff's subjective complaints were inconsistent with the record as a whole in finding she was not disabled.  The Commissioner points out that the ALJ considered, among other things, Plaintiff's treatment records and the objective medical evidence, her reported daily activities, and the opinion evidence.  Thus, the Commissioner contends the ALJ properly evaluated her symptoms and her subjective complaints in accordance with the SSA's rules and, further, that the evaluation is supported by substantial evidence.

In his decision, the ALJ found that

> [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [her] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record . . . .
>
> As for [her] statements about the intensity, persistence, and limiting effects of . . . her symptoms, they are inconsistent because they are not entirely supported by the evidentiary record. The undersigned has considered [her] complaints of disabling pain and other symptoms; however, she does not have a medically determinable impairment or combination of impairments that would be expected to result in restrictions in the performance of light work as set forth above.

[Tr. 21]. For the reasons below, the Court finds the ALJ appropriately evaluated Plaintiff's symptoms and her subjective complaints, and substantial evidence supports the ALJ's evaluation.

A claimant's subjective complaints are but one of many factors an ALJ is to consider when making the RFC finding. *See* 20 C.F.R. § 404.1545(a)(3). When a disability determination that would be fully favorable to the plaintiff cannot be made solely based on the objective medical evidence, an ALJ must analyze the symptoms of the plaintiff, considering the plaintiff's statements about pain or other symptoms with the rest of the relevant evidence in the record and factors outlined in 20 C.F.R. section 404.1529(c)(3):

> In evaluating subjective complaints of disabling pain, this court looks to see whether there is objective medical evidence of an underlying medical condition, and if so, then 1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or, 2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 117 (6th Cir. 1994) (citing *Jones v. Sec'y, Health & Hum. Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991)). In addition,

22

> [t]he social security regulations establish a two-step process for evaluating pain . . . . In order for pain or other subjective complaints to be considered disabling, there must be (1) objective medical evidence of an underlying medical condition, and (2) objective medical evidence that confirms the severity of the alleged disabling pain arising from that condition, or objectively, the medical condition is of such severity that it can reasonably be expected to produce such disabling pain.

*Chopka v. Saul*, No. 5:18CV945, 2019 WL 4039124, at *6 (N.D. Ohio Aug. 27, 2019).

The Social Security Administration has clarified "that subjective symptom evaluation is not an examination of an individual's character . . . ." SSR 16-3p, 2017 WL 5180304, *2 (Oct. 25, 2017). When evaluating a claimant's subjective complaints, the Social Security Administration "will review the case record to determine whether there are explanations for inconsistencies in the individual's statements about symptoms and their effects, and whether the evidence of record supports any of the individual's statements at the time he or she made them." SSR 16-3p; *see also Davis v. Comm'r of Soc. Sec. Admin.*, No. 3:19-CV-117, 2020 WL 3026235, at *6 (S.D. Ohio June 5, 2020), *report and recommendation adopted sub nom.,* No. 3:19-CV-117, 2020 WL 6273393 (S.D. Ohio Oct. 26, 2020) (discussing SSR 16-3p).

The ALJ must consider certain factors when evaluating a claimant's alleged symptoms, including complaints of pain. Those factors are:

> (i) the claimant's daily activities;
>
> (ii) the location, duration, frequency, and intensity of the pain or other symptoms;
>
> (iii) precipitating and aggravating factors;
>
> (iv) the type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate the pain or other symptoms;

23

(v) treatment, other than medication, a claimant receives or has received for relief of pain or other symptoms;

(vi) any measures the claimant takes or has taken to relieve the pain or other symptoms; and

(vii) other factors concerning the claimant's functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. § 404.1529. The decision need not contain discussion and citations as to every possible factor to be sufficiently specific. *See Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 664 (6th Cir. 2004).

An ALJ's determination as to a claimant's credibility regarding statements concerning his symptoms is to be afforded "great weight and deference," and courts "are limited to evaluating whether . . . the ALJ's explanations for partially discrediting [a claimant's testimony] are reasonable and supported by substantial evidence in the record." *Schmiedebusch v. Comm'r of Soc. Sec. Admin.*, 536 F. App'x 637, 649 (6th Cir. 2013) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475–76 (6th Cir. 2003)); *see also Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 n.1 (6th Cir. 2016) (noting that SSR 16-3p removed the term "credibility" to "clarify that subjective symptom evaluation is not an examination of an individual's character"); *Barber v. Kijakazi*, No. 1:20-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022), *report and recommendation adopted*, 2022 WL 853208 (M.D. Tenn. Mar. 22, 2022) (explaining that although the Commissioner removed the term "credibility" when SSR 16-3p was implemented, "there appears to be no substantive change in the ALJ's analysis and nothing to indicate that case law pertaining to credibility evaluations" has been abrogated (citation omitted)). Factual determinations are the domain of the ALJ, and "[a]s long as the ALJ cited substantial, legitimate

evidence to support his factual conclusions, we are not to second-guess." *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012).

In this case, the ALJ expressly considered many of the factors when evaluating Plaintiff's symptoms and her subjective complaints, including her reported daily activities, her treatment history and the objective medical evidence, and the opinion evidence.

### 1. Plaintiff's Reported Daily Activities

The ALJ properly considered Plaintiff's reported daily activities, which did not "indicate that she is unable to get about in a manner that is not restricted to a disabling degree" [Tr. 21 (citing *id.* at 43 (Hearing Testimony), 247–54 (Plaintiff's Function Report))]. *See* 20 C.F.R. § 404.1529(c)(3)(i) (directing consideration of a claimant's daily activities when considering the severity of alleged symptoms). The ALJ specifically noted that Plaintiff reported being able to complete her personal care needs, prepare simple meals, perform household chores, drive, shop, read, and watch television [Tr. 21, 43, 248–54]. The Court finds the ALJ appropriately considered Plaintiff's reported daily activities, and it was suitable for him to find them inconsistent with the alleged severity and limiting effects of her symptoms.

### 2. Plaintiff's Treatment History and the Objective Medical Evidence

The ALJ also appropriately reviewed and considered Plaintiff's treatment history and the objective medical evidence, which he found were not entirely consistent with her subjective complaints [*Id.* at 21]. *See* 20 C.F.R. §§ 404.1529(c)(2) ("Objective medical evidence . . . is a useful indicator to assist us in making reasonable conclusions about the intensity and persistence of your symptoms and the effect those symptoms . . . may have on your ability to work."), -(3)(v) (directing consideration of the effect of the treatment, other than medication, that a claimant received when considering the severity of alleged symptoms). The Court finds the ALJ

25

appropriately considered the inconsistencies between Plaintiff's subjective allegations and her treatment history and with the objective medical evidence when discounting her subjective complaints. *See, e.g.*, *Temples v. Comm'r of Soc. Sec.*, 515 F. App'x 460, 462 (6th Cir. 2013) ("The ALJ reasonably discounted [Plaintiff's] testimony concerning the severity of her pain because her testimony was inconsistent with the medical evidence in the record.").

As to treatment history, the ALJ noted that Plaintiff's symptoms appeared to improve following her October 2019 right ankle fusion surgery, as indicated by multiple reports that noted she was happy with the surgery and was experiencing only minimal pain and swelling [Tr. 21; *see, e.g.*, *id.* at 470 (Plaintiff saying she is "doing well today, no new complaints" and denying "any significant pain at this point in time" in early January 2020), 472 (Plaintiff denying pain in December 2019 at post-operative follow-up appointment), 475 (Plaintiff stating in November 2019 that she was "doing well and has had very little pain" and "she feels better than she did before having the procedure"), 504 (Plaintiff stating that "overall she is doing very well with regard to her right ankle" and "pain she was experiencing prior to surgery has nearly completely resolved" in May 2020), 507–08 (Plaintiff stating "overall she is doing well with no pain and no swelling," denying "any new problems or concerns today," and "she is very happy with her right ankle fusion" as of late January 2020)].

As another example, the physician who performed Plaintiff's right ankle fusion procedure and who also saw her for follow-up treatment, Jason Fogleman, M.D. ("Dr. Fogleman"), noted that she was doing well and that her right ankle fusion was well-healed [*Id.* at 505]. Dr. Fogleman prescribed meloxicam for her low-back pain and provided instructions for a core-strengthening program, and he recommended she use a rocker bottom-type shoe, which Plaintiff said she would obtain [*Id.* at 505]. The ALJ also noted that she did not require further follow-up appointments

26

with Dr. Fogleman after her May 2020 six-month post-operative visit [*Id.* at 21, 504–05]. Moreover, she received no additional treatment following her May 2020 appointment with Dr. Fogleman other than going to the chiropractor from June 2020 through January 2021 until she saw Kimberly D. Roller, M.D. ("Dr. Roller"), in February 2021. Plaintiff reported to Dr. Roller that her right ankle had "been swollen since her surgery[;]" however that assertion is inconsistent with her own statements at her follow-up appointments, which indicated she was not experiencing significant pain and swelling at her post-operative appointments, further evidenced by the fact that she received no specific right ankle treatment for almost nine (9) months [*Id.* at 504–05, 540–42]. Furthermore, her assertion that her ankle had been swollen following her surgery is inconsistent with Dr. Fogleman's post-operative examinations findings, which revealed minimal or no swelling and tenderness, a well-healed surgical incision, neutral hindfoot alignment, intact stability, and normal motor and sensory findings [*Id.* at 470, 473, 504, 507]. In light of all of this the ALJ determined that "the medical record does not indicate pain and swelling of her right lower extremity of such severity as to interfere with her ability to perform work-related tasks within the" final RFC [*Id.* at 21]. Plaintiff fails to identify any objective evidence demonstrating that she was having "severe difficulties with her right ankle"; instead, she seems to rely heavily on her hearing testimony that she had to elevate her foot [*See* Doc. 13 pp. 13–14 (citing Tr. 40–41)]. The Court therefore finds the ALJ's review of the treatment history and objective evidence was thorough in this case, and it was appropriate for him to rely on these factors when assessing her symptoms, including those related to her alleged difficulties with her right ankle.

27

### 3.     Opinion Evidence

The Court finds the ALJ appropriately evaluated and considered the opinion evidence when assessing Plaintiff's subjective complaints.[9] A "medical opinion" is defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ." 20 C.F.R. § 404.1513(a)(2). When evaluating the persuasiveness of a medical opinion or prior administrative medical finding, the ALJ must articulate how she considered the factors of supportability and consistency. *See* 20 C.F.R. §§ 404.1520c, 416.920c. While Plaintiff does not appear to specifically challenge the validity of the ALJ's assessment of the opinion evidence, the Court nonetheless finds that the ALJ's assessment of the opinion evidence appears appropriate in this case.

The ALJ found the initial opinion of the state agency medical consultant unpersuasive because additional evidence was received that supported a reduction in Plaintiff's exertion [Tr. 22 (citing Tr. 67–77)]. However, the ALJ found the assessment of the state agency medical consultant's determination on reconsideration to be somewhat persuasive due to the state agency physician's "programmatic expertise and opportunity to review the breadth of the evidence available at the time of their review" [*Id.* (citing Tr. 79–90)]. Notwithstanding that determination, the ALJ found that additional evidence received at the hearing level supported a reduction in Plaintiff's ability to stand and walk [*Id.*]. The ALJ stated that he therefore considered the totality of the evidence, including her complaints of swelling in her right lower extremity, when crafting

---

[9]     The applicable regulations for the evaluation of medical opinions have been abrogated as to claims filed on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . including those from your medical sources."); s*ee also Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5852–57 (Jan. 18, 2017). As Plaintiff's application was filed after March 27, 2017, the revised regulations apply.

the final RFC [*Id.*]. Thus, it is apparent the ALJ considered the state agency findings, but he found that Plaintiff required more intensive limitations than what the state agency physicians assessed. The Court finds the ALJ appropriately evaluated and reviewed the administrative medical findings in this case, and it was proper for him to consider them when assessing Plaintiff's symptoms and her subjective complaints.

In summary, the ALJ properly relied upon Plaintiff's reported daily activities, her treatment history and the objective medical evidence, and the prior administrative medical findings when assessing her symptoms. The Court therefore finds the ALJ's finding that Plaintiff's subjective allegations regarding the severity of her symptoms was not consistent with the overall record is supported by substantial evidence. Plaintiff has not presented an appropriate basis for remand of the Commissioner's final decision.

## VI.    CONCLUSION

Based on the foregoing, the Court will **DENY** Plaintiff's Motion for Judgment on the Pleadings [**Doc. 12**], and **GRANT** the Commissioner's Motion for Summary Judgment [**Doc. 20**]. The Court **AFFIRMS** the decision of the Commissioner and **DIRECTS** the Clerk of Court to close this case.

ORDER ACCORDINGLY.

Jill E. McCook
United States Magistrate Judge

29